# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

BRIAN WAGNER,

          Plaintiff,

          v.

KILOLO KIJAKAZI,
Acting Commissioner of
Social Security,

          Defendant.

CIVIL ACTION NO. 3:21-cv-00743

(SAPORITO, M.J.)

## MEMORANDUM

In this matter, the plaintiff, Brian Wagner, seeks judicial review of the final decision of the Commissioner of Social Security denying his claim for disability insurance benefits, pursuant to 42 U.S.C. § 405(g). The matter has been referred to the undersigned United States magistrate judge on consent of the parties, pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73.

### I.   BACKGROUND

On December 4, 2017, Wagner protectively filed a claim for disability insurance benefits, asserting a disability onset date of September 19, 2016. (Tr. 12.) The claim was initially denied by state agency reviewers on March 30, 2018. The plaintiff then requested an

administrative hearing.

A hearing was subsequently held on June 5, 2019, before administrative law judge Charles Dominick (the "ALJ"). The ALJ received testimony from the plaintiff and an impartial vocational expert, Patricia Chilleri.

On July 17, 2019, the ALJ denied Wagner's application for benefits in a written decision. (Admin. Tr. 12-24.) The ALJ followed the familiar five-step sequential evaluation process in determining that Wagner was not disabled under the Social Security Act. *See generally Myers v. Berryhill*, 373 F. Supp. 3d 528, 534 (M.D. Pa. 2019) (describing the five-step sequential evaluation process). First, the ALJ found that Wagner met the insured status requirements through December 31, 2022. At step one, the ALJ found that Wagner had not engaged in substantial gainful activity since September 19, 2016, the alleged onset date. At step two, the ALJ found that Wagner had the severe impairments of: traumatic brain injury resulting in post concussive syndrome, chronic headaches and neurocognitive disorder, adjustment disorder, post-traumatic stress disorder (PTSD), cervical degenerative disc disease with disc herniation, and occipital neuralgia. (Tr. 14.) The ALJ found that Wagner had the

following non-severe impairments:  right eye injury and obesity. At step three, the ALJ found that Wagner did not have an impairment or combination of impairments that meets or medically equals the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. The ALJ determined that Wagner has moderate impairments in understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself.

Between steps three and four of the sequential evaluation process, the ALJ assessed Wagner's residual functional capacity ("RFC"). *See generally id.* at 534 n.4 (defining RFC). After evaluating the relevant evidence of record, the ALJ found that Wagner had the RFC to perform "light work"[1] as defined in 20 C.F.R. 404.1567(b) with the following limitations:

> [T]he claimant is limited to occasional balancing, stooping, kneeling, crouching, and climbing on ramps and stairs, but never crawling or climbing on ladders, ropes, or scaffolds. The claimant must avoid unprotected heights and dangerous moving machinery.

---

[1] The Social Security regulations define "light work" as a job that "involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. § 404.1567(b); *id.* § 416.967(b).

> The claimant must avoid overhead reaching with the
> bilateral upper extremities. The claimant is limited to
> simple routine tasks, but not at a production rate pace.
> The claimant is limited to occupations requiring no
> more than simple work related decisions with no more
> than occasional changes in the work setting. The
> claimant is limited to occasional interaction with
> supervisors and co-workers, but he must avoid
> interaction with the public. The claimant is limited to a
> moderate noise intensity level as defined in the
> Dictionary of Occupational Titles and related
> publications.

(Tr. 18.)

In making these factual findings regarding Wagner's RFC, the ALJ

considered his symptoms and the extent to which they could reasonably

be accepted as consistent with the objective medical evidence and other

evidence of record. *See generally* 20 C.F.R. § 404.1529; Soc. Sec. Ruling

16-3p, 2017 WL 5180304. The ALJ also considered and articulated how

persuasive he found the medical opinions and prior administrative

medical findings of record. *See generally* 20 C.F.R. § 404.1520c.

At step four, the ALJ found that the plaintiff is unable to perform

any of his past relevant work as a teacher, athletic coach, and a composite

job of a television installer and delivery. (Tr. 22.)

At step five, based on the RFC and on testimony by the vocational

expert, the ALJ concluded that Wagner was capable of performing work

as a small products assembler, DOT# 706.684-022,[2] which is a light

exertion position with an SVP of 2, with approximately 20,700 jobs in the

national economy; a paper inserter, DOT# 920.687-138,[3] which is a light

exertion position with an SVP of 2, with approximately 68,000 jobs in the

national economy; and a cleaner and polisher, DOT# 709.687-010,[4] which

is a light exertion position with an SVP of 2, with approximately 39,700

jobs in the national economy.[5] The ALJ explained:

> The vocational expert testified that the Dictionary of
> Occupational Titles does not specifically differentiate
> between overhead reaching and reaching in all directions[,]
> and this portion of the testimony was based on experience
> working with employers in job placement and observation
> and evaluating these positions.

(Tr. 23.)

---

[2] *See* DICOT 706.684-022, 1991 WL 679050 ("assembler, small products I").

[3] *See* DICOT 920.687-138, 1991 WL 687995 ("paper inserter").

[4] *See* DICOT 709.687-010, 1991 WL 679134 ("cleaner and polisher").

[5] Although the ALJ in the RFC determination limited the claimant to "a moderate noise intensity level," the ALJ has provided as sample occupations the jobs of small products assembler, DOT# 706.684-022, and paper inserter, DOT# 920.687-138, which the Dictionary of Occupational Titles classifies as having a loud noise intensity level. Furthermore, in the RFC determination, the ALJ limited the plaintiff to occasional stooping, but the Dictionary of Occupational Titles classifies that paper inserter, DOT# 920.687-138, position as one requiring frequent stooping. These inconsistencies must be addressed upon remand.

Based on this finding, the ALJ concluded that Wagner was not disabled for social security purposes.

The plaintiff sought further administrative review of his claims by the Appeals Council, but his request was denied on February 17, 2021, making the ALJ's July 2019 decision the final decision of the Commissioner subject to judicial review by this court. (Tr. 1.)

Wagner timely filed his complaint in this court on April 23, 2021. The Commissioner has filed an answer to the complaint, together with a certified copy of the administrative record. Both parties have filed their briefs, and this matter is now ripe for decision.

## II.   DISCUSSION

Under the Social Security Act, the question before this court is not whether the claimant is disabled, but whether the Commissioner's finding that he is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. *See generally* 42 U.S.C. § 405(g) (sentence five); *id.* § 1383(c)(3); *Myers*, 373 F. Supp. 3d at 533 (describing standard of judicial review for social security disability insurance benefits and supplemental security income administrative decisions).

Wagner asserts on appeal that the ALJ's RFC determination is not supported by substantial evidence because the ALJ erred in his evaluation of the medical opinion of the treating psychologist. (Doc. 18, at 3). Wagner asserts that, if the ALJ had credited the treating opinion, he would have been found disabled.

## A. Evaluation of Medical Opinions

The plaintiff contends that the ALJ's decision is not supported by substantial evidence because the ALJ erred in his evaluation of conflicting medical opinions and prior administrative findings presented in the administrative proceedings below. As a preface, we note that, in evaluating the medical opinion evidence of record, an "ALJ is not only entitled, but required to choose between" conflicting medical opinions. *Cotter v. Harris*, 642 F.2d 700, 706 (3d Cir. 1981); *see also Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500, 505 (3d Cir. 2009). "[T]he possibility of drawing two inconsistent conclusions from the evidence does not prevent [an ALJ's decision] from being supported by substantial evidence." *Consolo v. Fed. Maritime Comm'n*, 383 U.S. 607, 620 (1966). Ultimately, to reverse the ALJ's findings and decision, "we must find that the evidence not only *supports* [a contrary] conclusion, but *compels* it." *Immigration &*

*Naturalization Serv. v. Elias-Zacarias*, 502 U.S. 478, 481 n.1 (1992).

Here, the plaintiff originally filed his administrative claim for benefits in December 2017. Thus, a relatively new regulatory framework governing the evaluation of medical opinion evidence applies to this case.

"The new regulations have been described as a 'paradigm shift' in the way medical opinions are evaluated." *Knittle v. Kijakazi*, Civil No. 1:20-CV-00945, 2021 WL 5918706, at *4 (M.D. Pa. Dec. 15, 2021). "Prior to March 2017, ALJs were required to follow regulations which defined medical opinions narrowly and created a hierarchy of medical source opinions with treating sources at the apex of this hierarchy." *Densberger v. Saul*, Civil No. 1:20-CV-772, 2021 WL 1172982, at *7 (M.D. Pa. Mar. 29, 2021). Under this prior regulatory scheme, the Social Security Administration "followed the 'treating physician rule,' which required the agency to give controlling weight to a treating source's opinion, so long as it was 'well-supported by medically acceptable clinical and laboratory diagnostic techniques' and not 'inconsistent with the other substantial evidence' in the record." *Michelle K. v. Comm'r of Soc. Sec.*, 527 F. Supp. 3d 476, 481 (W.D. Pa. 2021). However, the regulations governing the evaluation of medical evidence were amended and the treating physician

rule was eliminated effective March 27, 2017. *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5,844 (Jan. 18, 2017); *see also Densberger*, 202 WL 1172982, at \*7–\*8; *Michelle K.*, 527 F. Supp. 3d at 481. "The range of opinions that ALJs were enjoined to consider were broadened substantially and the approach to evaluating opinions was changed from a hierarchical form of review to a more holistic analysis." *Densberger*, 2021 WL 1172982, at \*7. Under these new regulations, the agency "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's] medical sources." 20 C.F.R. §§ 404.1520(a), 416.920c(a), "Rather than assigning weight to medical opinions, [an ALJ] will articulate 'how persuasive' he or she finds the medical opinions." *Knittle*, 2021 WL 5918706, at \*4; *see also* 20 C.F.R. §§ 404.1520, 416.920c(b). The agency will consider how persuasive it finds each medical opinion and prior administrative medical finding in the case record using the following factors: "(1) supportability; (2) consistency; (3) relationship with the claimant, including the length of the treatment relationship, the frequency of examinations, purpose and extent of the treatment

relationship, and the examining relationship; (4) specialization; and (5) any other factors that 'tend to support or contradict a medical opinion or prior administrative medical finding.' " *Michelle K.*, 527 F. Supp. 3d at 481; *see also* 20 C.F.R. §§ 404.1520c(a), 416.920c(a); *Densberger*, 2021 WL 1172982, at *8. Under the new regulations, "[t]he two 'most important factors for determining the persuasiveness of medical opinions are consistency and supportability,' which are the 'same factors' that formed the foundation of the treating source rule." *Densberger*, 2021 WL 1172982, at *8; *see also* 20 C.F.R. §§ 404.1520c(b)(2). The regulations explain supportability thusly:  "The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(1). With regard to consistency, "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(2). An ALJ is specifically required to address these two factors

in his or her decision. *See* 20 C.F.R. §§ 404.1520(c)(b)(2), 416.920c(b)(2); *see also Densberger*, 2021 1172982, at *8; *Michelle K.*, 527 F. Supp. 3d at 482. "The ALJ may—but is not required to—explain how he considered the remaining factors." *Michelle K.*, 527 F. Supp. 3d at 482; *see also* 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2); *Densberger*, 2021 WL 1172982, at *8. "However, when the ALJ has found two or more medical opinions to be equally well supported and consistent with the record, but not exactly the same, the ALJ must articulate how he or she considered [the remaining] factors ...." *Densberger*, 2021 WL 1172982, at *8; *see also* 20 C.F.R. §§ 404.1520c(b)(3), 416.920c(b)(3); *Michelle K.*, 527 F. Supp. 3d at 482.

### B. The ALJ's Analysis of the Treating Psychologist's Opinion

The plaintiff contends that the ALJ's decision is not supported by substantial evidence because the ALJ erred in his evaluation of the opinion of the treating psychologist, Donna Salvucci. Specifically, the plaintiff argues that the ALJ failed to address the supportability and consistency factors when evaluating Ms. Salvucci's opinion. (Doc. 18, at 6.)

In her opinion, Ms. Salvucci stated that the plaintiff's GAF scores over the previous year ranged from 20 to 30. Ms. Salvucci opined that the plaintiff is seriously limited but not precluded from understanding and remembering very short and simple instructions, carrying out very short and simple instructions, setting realistic goals, adhering to basic standards of neatness and cleanliness, and travelling to unfamiliar places. Ms. Salvucci opined that the plaintiff is unable to meet competitive standards in remembering work procedures, maintaining attention, accepting instructions and responding appropriately to criticism from supervisors, being aware of normal hazards and appropriate precautions, understanding and remembering detailed instructions, and carrying out detailed instructions. She opined that the plaintiff has no useful ability to function in maintaining regular attendance and punctuality, sustaining an ordinary routine without special supervision, working in coordination with or proximity to others without being unduly distracted, making simple work-related decisions, completing a normal workday and workweek without interruption from psychologically-based symptoms, performing at a consistent pace without an unreasonable number and length of rest periods, getting along with co-workers or peers without

unduly distracting them or exhibiting behavioral extremes, responding appropriately to changes to a routine work setting, dealing with normal work stress, dealing with the stress of semi-skilled to skilled work, interacting appropriately with the general public, exhibiting socially appropriate behavior, and using public transportation. Ms. Salvucci explained that her opinion was based upon the most recent neuropsychological evaluation in 2018 in her practice, "PTSD which interfere[s] with [the plaintiff's] ability to frequently leave his house except for medical [appointments and] very brief trips to food stores," the plaintiff's "extreme hyperarous[al] when in close quarters of others, even with people with whom he is familiar," and the plaintiff's struggles with rage, including "a history of externally raging and placing himself and others in very dangerous situations." (Tr. 701.)  Ms. Salvucci explained that her opinion is based upon "memory testing in neuropsychologic evaluation dated [July 12, 2018; a] Beck Anxiety Scale rating [the plaintiff] at 'severe[;]' [and the] neuropsychological testing [of the plaintiff's] ability to rely on working memory," which was "in the 'low average range.'" Ms. Salvucci noted that the plaintiff's "emotional and psychological symptoms exacerbate his cognitive problems." (Tr. 703.) Ms.

Salvucci stated that, when in proximity to others due to use of public transportation, the plaintiff "thinks about jumping in front of trains," and that, in general, the plaintiff "cannot consistently [manage] rage reactions." (Tr. 705.) Further, Ms. Salvucci stated that she expects the plaintiff's impairments to require the plaintiff to be absent from work for more than four days each month.

In his decision, the ALJ's analysis of Ms. Salvucci's opinion consisted of the following:

> Donna Salvucci, M.Ed., opined that the claimant is unable to sustain an ordinary work routine without special supervision, make simple work-related decisions, deal with normal work stress, or work in coordination or close proximity to others (19F). The undersigned finds this opinion not persuasive, as it is generally inconsistent with and not supported by the medical and nonmedical evidence of record, as previously discussed. While the record certainly supports moderate mental functional limitations, Ms. Salvucci's opinion overestimates those limitations.

(Tr. 22.)

This court recently held that an ALJ's explanation of her evaluation of medical opinions was "insufficient to determine whether substantial evidence support[ed] her RFC finding" where "the ALJ's only analysis as to why Plaintiff should be limited to light work instead of sedentary work

is that Plaintiff [stated] that she walks her dogs for exercise up to 6-7 times per week." *Ziegler v. Saul*, No. CV 2:19-1103, 2021 WL 964939, at *4 (W.D. Pa. Mar. 15, 2021). We noted that "[t]he ALJ [did] not adequately explain how walking a dog for exercise the equivalent of once a day translate[d] into the ability to walk to the extent required to perform light work." *Id.* (citing 20 C.F.R. § 404.1567(b)). Consequently, we found that "the ALJ failed to explain her findings with sufficient specificity." *Id.* In that case, the ALJ attempted to provide explanation for rejection of a medical opinion by citing to one particular piece of evidence.

Here, the ALJ has not provided citations to *any* particular evidence of record to justify the ALJ's rejection of the opinion of the treating psychologist. The ALJ's bare statement that the medical opinion "is generally inconsistent with and not supported by the medical and nonmedical evidence of record" is insufficient explanation for the rejection of the opinion. (Tr. 22.) The statement does not constitute an evaluation of the supportability and consistency of the opinion. The subsequent phrase—"as previously discussed"—does not refer to any discussion of Ms. Salvucci's opinion, but rather, presumably, to a recitation of the evidence. That recitation of the evidence fails to clearly and instantly justify the

ALJ's rejection of Ms. Salvucci's opinion. Therefore, we find that the ALJ has not adequately explained his rejection of Ms. Salvucci's opinion.

## III. CONCLUSION

Based on the foregoing, we conclude that the Commissioner's finding that Wagner was not disabled is not supported by substantial evidence Accordingly, the Commissioner's decision denying his application will be vacated and the case will be **REMANDED** for further proceedings consistent with this opinion.

An appropriate Order follows.

Dated: September 22, 2022             *s/Joseph F. Saporito, Jr.*
                                      JOSEPH F. SAPORITO, JR.
                                      United States Magistrate Judge